Filed 7/6/23  P. v. Hernandez CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JAIME CELESTINO HERNANDEZ,<br><br>    Defendant and Appellant. | F084077<br><br>(Kern Super. Ct. No. BF186634A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

J. M. Malik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant and appellant Jaime Celestino Hernandez (defendant) was convicted of assault with a semiautomatic firearm and several other offenses.  Defendant contends there is insufficient evidence to support the jury's finding that he committed assault with a semiautomatic firearm.  Defendant also contends the trial court erred by failing to instruct the jury on simple assault as a lesser included offense of assault with a

semiautomatic firearm and on misdemeanor child endangerment as a lesser included offense of felony child endangerment. Defendant further contends he received ineffective assistance of counsel for defense counsel's failure to request the court exercise its newly enacted sentencing discretion.[1] The People respond that there is sufficient evidence to support defendant's conviction of assault with a semiautomatic firearm. The People also argue the court had no duty to instruct the jury on simple assault or misdemeanor child endangerment, and any failure to do so was harmless. Lastly, the People contend defendant did not receive ineffective assistance of counsel for failure to argue that the court exercise its new sentencing discretion. We affirm.

## PROCEDURAL SUMMARY

On October 26, 2021, the District Attorney of Kern County filed an information charging defendant with: assault with a semiautomatic firearm against Jane Doe 1 (Pen. Code, § 245, subd. (b);[2] count 1); criminal threats against Jane Doe 1 (§ 422; count 2); four counts of felony child endangerment against Jane Does 2, 3, and 4, and John Doe (§ 273a, subd. (a); counts 3 through 6); possession of a firearm by a prohibited person (§ 29800, subd. (a)(1); count 7); possession of ammunition by a prohibited person (§ 30305, subd. (a)(1); count 8); misdemeanor battery on a cohabitant (§ 243, subd. (e)(1); count 9); and misdemeanor destruction of a wireless device (§ 591.5; count 10). As to counts 1 through 6, the information alleged that defendant personally used a firearm (§ 12022.5, subd. (a)). As to counts 1 through 8, the information alleged

---

[1] Defendant is represented by appointed counsel on appeal and is therefore not permitted to file his own briefing. (*In re Walker* (1976) 56 Cal.App.3d 225, 228; *People v. Scott* (1998) 64 Cal.App.4th 550.) Despite the appointment of counsel, defendant filed his own "MOTION FOR PERMISSION TO FILE A SUPPLEMENTAL BRIEF" on December 28, 2022. Defendant's request was denied pursuant to our January 4, 2023, order citing *In Re Walker* and *People v. Scott*. On January 31, 2023, defendant filed a second document that was construed as a renewed request to file a supplemental brief. This request was denied by order issued on February 8, 2023, for the same reasons explained in our January 4, 2023, order.

[2] All further statutory references are to the Penal Code unless otherwise stated.

2.

that defendant had suffered one prior "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) which also qualified as a serious felony conviction (§ 667, subd. (a)).[3]

Following trial, the trial court granted the parties' motions to dismiss count 10 because the telephone damaged was not a wireless device subject to section 591.5. (§ 1118.1.)  The court denied defendant's request to include instructions to the jury on misdemeanor child endangerment (§ 273a, subd. (b)) as a lesser included offense for counts 3 through 6.

On January 12, 2022, the jury found defendant guilty on counts 1 and 3 through 9. The jury found defendant not guilty on count 2 and found not true the firearm enhancement allegations on counts 1 and 3 through 6.  In a bifurcated proceeding, the trial court found true the prior conviction allegations.

On March 17, 2022, the trial court denied defendant's *Romero*[4] motion to dismiss his prior strike but struck the prior serious felony conviction allegation as to count 1.  The court then sentenced defendant as follows:  the upper term of 18 years (nine years doubled per the prior strike) on count 1; the upper term of six years on count 7 stayed pursuant to section 654; the upper term of six years on count 8 stayed pursuant to section 654; and one year on count 9 to run concurrently with the sentence on count 1.  The court struck the sentences on counts 3 through 6 in the interest of justice.

Defendant filed a notice of appeal on the day he was sentenced.

## FACTUAL SUMMARY

### I.    Prosecution Evidence

Defendant and Jane Doe 1 had been in a relationship for two years and lived together in a one-bedroom apartment in Bakersfield.  On July 25, 2021, defendant and

---

[3] The trial was bifurcated for the prior conviction at defendant's request. Defendant waived his right to a jury trial regarding his prior conviction.

[4] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

Jane Doe 1 were in their apartment with four children, Jane Does 2, 3 and 4, and John Doe.[5] At about 9:30 p.m. defendant received a FaceTime call on his cell phone, which was on the couch. Jane Doe 1 saw the caller's face was female. This made Jane Doe 1 upset because she thought defendant was cheating on her. Jane Doe 1 began crying. Jane Doe 1 bent the flatscreen television and banged a candleholder against the television screen because she was mad. Defendant told Jane Doe 1 the call was a wrong number and not to worry about it. Jane Doe 1 confronted defendant about a hickey on his neck. Defendant became upset by this and told Jane Doe 1 to gather her things and leave with her kids. The four children were awake during this with Jane Doe 2 and Jane Doe 3 crying during.

Jane Doe 1 went into the bedroom she shares with defendant and began to gather her things inside the closet. She came out of the closet and was putting her things inside a bag. Defendant was standing in front of Jane Doe 1. Defendant and Jane Doe 1 were arguing when defendant pulled up his shirt and pulled out a black handgun that was tucked inside his pants. Defendant pointed the gun at Jane Doe 1. Jane Doe 1 ran inside the closet and tried to close the door. She heard the gun go off once. Jane Doe 2 was in the bedroom sitting on the bed and the other three children were in the living room when the gun was fired. The bullet went through the closet wall, came out in the kitchen, and then continued through a window frame out of the residence.[6]

Defendant opened the closet door to check on Jane Doe 1. Jane Doe 1 began crying and screaming, saying to defendant, "You tried to kill me, you tried to kill me." Defendant tried to calm her down. Jane Doe 1 stormed out of the room and went to the

---

[5] Jane Doe 2, born in August 2020, is the daughter of defendant and Jane Doe 1. Jane Doe 3, born in January 2016, is Jane Doe 1's daughter with another man. Jane Doe 4, born in June 2012, and John Doe, born in November 2017, are defendant's children with another woman.

[6] The bullet created holes showing its trajectory. The hole in the closet wall was estimated by Kern County Sheriff's Deputy Angelo Gonzalez to be between five and five and half feet from the floor.

4.

apartment's landline phone.  She called 911.  Defendant yanked off the cord connected to the phone when Jane Doe 1 said the address.  He hit Jane Doe 1 twice in the back of her head with a closed fist.  Defendant told Jane Doe 1 he was going to take his kids to their mom's house and then come back to beat her more for calling 911.  Defendant also told Jane Doe 1 that he was going to leave the gun at the neighbor's, J.G.'s house.  Defendant then left the apartment with Jane Doe 4 and John Doe.  After he left, Jane Doe 1 reconnected the phone and called 911 again.

Kern County Sheriff's Deputies Angelo Gonzalez and Philippe Tampinco were dispatched to the apartment.  Jane Doe 1 described to Tampinco what happened.  She specifically told Gonzalez that the firearm defendant used was "a Glock handgun."  Gonzalez located a shell casing from a handgun ammunition on the carpet next to the dresser in the apartment bedroom.  Gonzalez and Tampinco searched J.G.'s apartment pursuant to a search warranted obtained by Tampinco.  A Glock 17 handgun inside of a holster was discovered in J.G.'s apartment on top of the refrigerator in the kitchen.  The gun had 10 nine-millimeter rounds inside its magazine.  Gonzalez showed the gun to Jane Doe 1 who identified it as the same gun defendant used earlier in the evening.  Photographs of the firearm and magazine were admitted at trial.  Jane Doe 1 also identified the gun's holster as belonging to defendant.  Gonzalez testified that the rounds inside the magazine were the same make and size as the shell casing discovered in defendant's apartment.  Tampinco testified that "semiautomatic firearm[s], like a Glock" have serial numbers on the slide.  The Glock 17 firearm recovered from J.G.'s apartment had a serial number on the slide.

Jane Doe 1 confirmed defendant as the person who shot at her at an infield show up conducted by Deputy Tampinco that night.  Defendant was arrested by the Kern County Sheriff's deputies.  Kern County Sheriff's Deputy Vincent Fricano read defendant his *Miranda*[7] rights and interviewed defendant in his patrol vehicle.  Defendant

---

[7] *Miranda v. Arizona* (1966) 384 U.S. 436.

5.

told Fricano a verbal argument took place but denied any physical altercation. Fricano had previously spoken with Jane Doe 4 who told Fricano that she saw defendant and Jane Doe 1 physically fighting. Defendant said Jane Doe 4 did not see that.

## II.    Defense Evidence

Jane Doe 4 testified as a defense witness. She confirmed Jane Doe 1 became upset when defendant received a FaceTime call on his cell phone on July 25, 2021. Jane Doe 1 began yelling at defendant outside the apartment and told him to come inside. Defendant came inside the apartment and Jane Doe 1 and defendant began yelling at each other. Jane Doe 1 hit and slapped defendant's body. Defendant did not hit Jane Doe 1 back. Jane Doe 1 bent the television and hit it with the remote control. Jane Doe 1 also threw a candleholder at the wall.

Defendant began loading his gun while standing at the kitchen table. Jane Doe 1 took the gun's top piece and ran with it into the bedroom.[8] Defendant followed Jane Doe 1 to the bedroom. Defendant met Jane Doe 1 at the bed and grabbed Jane Doe 1 by her neck with his right hand while trying to get the gun piece back with his left hand. Jane Doe 4 peeked into the bedroom from the living room to watch defendant and Jane Doe 1. Defendant got the gun piece from Jane Doe 1 and reassembled the gun. Defendant put the bullets inside the gun. Defendant and Jane Doe 1 were standing in the closet doorway struggling over the gun. The gun fired once toward the closet wall. Jane Doe 4 could not tell which of them pulled the trigger, but she thought it was Jane Doe 1. When the gun was fired, the other children, including Jane Doe 2, were on the couch in the living room.

Defendant told Jane Doe 1 to call her family, but instead, Jane Doe 1 called the police. Defendant pulled the cord out of the phone when Jane Doe 1 said into the phone, "I need you to come to my apartment right now." Defendant told Jane Doe 4 to get her stuff and defendant, Jane Doe 4 and John Doe left. Jane Doe 4 saw defendant come back

---

[8] Jane Doe 4 testified Jane Doe 1 took the "top part" of the gun but did not detail which piece of the gun was taken.

from J.G.'s apartment before defendant took Jane Doe 4 and John Doe to their mother's house.

## DISCUSSION

**I.     Sufficiency of the Evidence of Assault with a Semiautomatic Firearm**

Defendant contends there is insufficient evidence to support the jury's finding that he committed assault with a semiautomatic firearm.  Specifically, defendant contends that the prosecution failed to establish that the gun used during the assault was a semiautomatic firearm.

### A.     *Standard of Review*

"To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict – i.e., evidence that is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]' [Citation.]  A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; see also *People v. Johnson* (1980) 26 Cal.3d 557, 562; *Jackson v. Virginia* (1979) 443 U.S. 307, 317–320.)

**B.** *Applicable Law and Analysis*

Section 245, subdivision (b) provides: "Any person who commits an assault upon the person of another with a semiautomatic firearm shall be punished by imprisonment in the state prison for three, six, or nine years." (§ 245, subd. (b).) The elements of assault with a semiautomatic firearm are 1) the defendant did an act with a semiautomatic firearm that by its nature would directly and probably result in the application of force to a person; 2) the defendant did the act willfully; 3) the defendant was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and 4) the defendant had the present ability to apply force with a semiautomatic weapon to a person. (*People v. White* (2015) 241 Cal.App.4th 881, 884 [outlining the elements of assault under § 245, subd. (c)]; *People v. Williams* (2001) 26 Cal.4th 779, 790 [analyzing the mens rea for assault]; § 240.) The prosecution must therefore show defendant used a semiautomatic firearm as an element of this offense. (*People v. Le* (2015) 61 Cal.4th 416, 427 ["the use of a semiautomatic firearm is a necessary element of section 245, subdivision (b)"]; *In re Winship* (1970) 397 U.S. 358 [the prosecution is required to prove every element of an offense beyond a reasonable doubt].)

"A semiautomatic firearm 'fires once for each pull on the trigger and reloads automatically, but requires the shooter to release the trigger lever before another shot can be fired.' [Citation.] An automatic firearm 'will continue firing until either the trigger is released or the ammunition has been expended.'" (*In re Jorge M.* (2000) 30 Cal.4th 866, 874, fn. 4.)[9]

Defendant argues the prosecution failed to prove assault with a semiautomatic firearm because none of the prosecution's witnesses expressly testified that the gun

---

[9] The jury instructions on the charge of assault with a semiautomatic firearm included the equivalent definition from CALCRIM No. 875: "A *semiautomatic pistol* extracts a fired cartridge and chambers a fresh cartridge with each single pull of the trigger."

defendant used was a semiautomatic. Assuming there was only circumstantial evidence defendant used a semiautomatic firearm in the assault, "[s]ubstantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence." (*In re Michael D.* (2002) 100 Cal.App.4th 115, 126.) "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt." (*People v. Bean* (1988) 46 Cal.3d 919, 932–933; see also *People v. Towler* (1982) 31 Cal.3d 105, 118 ["Whether the evidence presented at trial is direct or circumstantial, … the relevant inquiry on appeal remains whether *any* reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt"].)

There is substantial evidence such that a rational juror could infer that the firearm defendant used in the assault was a semiautomatic. (*People v. Massie* (2006) 142 Cal.App.4th 365, 373–374 ["An inference is a logical and reasonable deduction or conclusion to be drawn from the proof of preliminary facts. [Citations.] It is the province of the trier of fact to decide whether an inference should be drawn and the weight to be accorded the inference"].) Gonzalez described the firearm confirmed by Jane Doe 1 as the one defendant used as a "Glock 17" that uses nine-millimeter rounds. Gonzalez explained that "[w]hen a round is fired from a firearm, the casing is ejected from the firearm" in discussing the shell casing found in the bedroom. Gonzalez confirmed People's exhibit No. 11 was a photograph of "the magazine that [he] removed from the firearm" with "a live round sticking out the top of the magazine." The ejection of the shell casing after the gun was fired and the live round at the top of the magazine indicates the firearm is equipped to eject a spent cartridge and automatically reload after it has been fired. The ability to reload automatically is a critical feature of a semiautomatic firearm. (*In re Jorge M.*, *supra*, 20 Cal.4th at p. 874, fn. 4.)

Deputy Tampinco, in his testimony, explained that certain firearms have serial numbers including "a semiautomatic firearm, like a Glock." Tampinco testified that Jane Doe 1 "[recalled] that it was specifically a Glock handgun" used by defendant. Tampinco's references to a semiautomatic firearm "like a Glock" could reasonably lead the jury to infer that defendant's Glock was a semiautomatic firearm. This is a reasonable conclusion particularly since defendant did not contest whether the gun was a semiautomatic at trial.

The "whole record" beyond witness testimony provided substantial evidence from which a rational trier of fact could conclude the gun was semiautomatic. (*People v. Johnson*, *supra*, 26 Cal.3d at p. 562.) The trial exhibits included photographs of: the firearm (People's exhibits Nos. 5 and 10), the firearm's magazine (People's exhibit No. 11) and the shell casing found in the apartment bedroom (People's exhibit No. 6). The photographs showed the gun had the ability to accept a detachable magazine and a slide mechanism for reloading the chamber after each shot. The jury could reasonably conclude the firearm was semiautomatic.

Defendant essentially asks us to reweigh the evidence to conclude the prosecution did not prove the gun was a semiautomatic firearm beyond a reasonable doubt. This is inconsistent with our standard of review on a challenge to the sufficiency of the evidence. (*People v. Jennings* (2010) 50 Cal.4th 616, 638 ["We neither reweigh the evidence nor reevaluate the credibility of witnesses"].) "If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Id.* at p. 639.) Defendant has not shown there is insufficient evidence that any rational juror could find that defendant used a semiautomatic firearm in the assault.

## II. Instructions on Lesser Included Offenses

Defendant contends the trial court erred by failing to instruct the jury on simple assault as a lesser included offense of assault with a semiautomatic firearm. He also

contends the trial court had a duty to instruct on misdemeanor child endangerment as a lesser included offense of felony child endangerment.

### A.     *Standard of Review*

"A trial court must give an instruction sua sponte on an uncharged lesser offense that is necessarily included in a greater charged offense if the evidence warrants the instruction. [Citation.]  The evidence warrants the instruction if there is substantial evidence on the basis of which a reasonable fact finder could find the defendant committed the lesser offense and did not commit the greater." (*People v. Rodriguez* (2018) 26 Cal.App.5th 890, 899 (*Rodriguez*).)  " 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could … conclude[]" ' that the lesser offense, but not the greater, was committed." (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).)  "A lesser offense is necessarily included in a greater offense if it is impossible to commit the greater without also committing the lesser." (*Rodriguez*, at p. 900.)  We review de novo the trial court's lack of instruction on lesser included offenses.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1218.)

### B.     *Instruction on Assault with a Semiautomatic Firearm*

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.)  "The elements of simple assault are included in the elements of aggravated assault .…" (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747 [simple assault (§ 240) is a lesser included offense of aggravated assault (§ 245, subd. (a)(1))]; *Rodriguez*, *supra*, 26 Cal.App.5th at p. 900 [same].)  An assault under section 245, subdivision (b) is simply an assault committed with a semiautomatic firearm.  (Cf. *People v. Miceli* (2002) 104 Cal.App.4th 256, 272 [trial court instructed on simple assault as a lesser included offense of assault with a semiautomatic firearm].)  Defendant could not commit the greater offense without also committing the lesser offense of simple assault.  Therefore, the trial court had a duty to instruct on simple assault if there was substantial evidence upon which a reasonable trier

11.

of fact could find that defendant committed the lesser offense rather than the greater. (*Rodriguez*, *supra*, 26 Cal.App.5th at p. 899.)

Defendant contends there is substantial evidence to support an instruction on simple assault because the record raised a question as to whether defendant used a weapon to assault Jane Doe 1 or if the gun discharged accidentally. Defendant principally argues that Jane Doe 4's testimony about what occurred was more credible than Jane Doe 1's testimony.

Preliminarily, we note that "[i]n deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury." (*Breverman*, *supra*, 19 Cal.4th at p. 162; *People v. Jones* (1990) 51 Cal.3d 294, 314 ["we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder"].) We thus do not evaluate whether Jane Doe 1 or Jane Doe 4 was more credible as part of our review.

Defendant's theory of the case was that the gun was shot accidentally. The jury was presumably unpersuaded by Jane Doe 4's account of the facts about how the gun was discharged. The evidence did not support a finding of simple assault: defendant either assaulted Jane Doe 1 with a semiautomatic firearm or he did not. The record must disclose substantial evidence such that a reasonable jury could find " 'that the lesser offense, but not the greater, was committed' " to mandate instruction on the lesser offense. (*Breverman*, *supra*, 19 Cal.4th at p. 162.) The trial court was not required to instruct on the lesser included offense of simple assault where the evidence did not support it. (*Ibid.* [the court is not obliged to instruct on theories that do not have substantial evidentiary support].)

Defendant also argues there is substantial evidence he committed simple assault because he grabbed Jane Doe 1's throat while she was sitting on the bed, yanked the cord out of the phone and punched the back of Jane Doe 1's head. Defendant's physical violence against Jane Doe 1 was the basis for the battery on a cohabitant count. (§ 243,

12.

subd. (e)(1); see also § 242 [battery "is any willful and unlawful use of force or violence upon the person of another"].)  Yanking the cord out of the phone was the basis for the misdemeanor destruction of a wireless device count, which was dismissed since the landline phone was not a wireless device.  (§ 591.5.)  None of these other acts constitute substantial evidence that defendant committed simple assault against Jane Doe 1 rather than assault with a firearm.  Again, the court is not required to instruct on a lesser offense in the absence of evidence to support that offense.  (*Breverman*, *supra*, 19 Cal.4th at p. 162.)

For these reasons, the trial court was not required to instruct the jury on simple assault as a lesser included offense of assault with a semiautomatic firearm.

## C.     *Instruction on Child Endangerment*

Section 273a defines felony child endangerment as follows:  "[a]ny person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered."  (§ 273a, subd. (a).)  Section 273a makes it a misdemeanor to engage in the same conduct "under circumstances or conditions *other than those* likely to produce great bodily harm or death."  (§ 273a, subd. (b), italics added.)  The elements of both offenses are the same with the only difference in whether the conduct was likely to produce great bodily harm or death.[10]  (*People v. Clark* (2011) 201 Cal.App.4th 235, 242, fn. 2; *People v. Sargent*

---

[10] The jury was instructed on the elements of felony child endangerment per CALCRIM No. 821:

> To prove that the defendant is guilty of this crime, the People must prove that:  [¶] 1. The defendant, while having care or custody of a child, willfully caused or permitted the child to be placed in a situation where the child's person or health was endangered; [¶] 2. The defendant caused or permitted the child to be endangered under circumstances or conditions likely to

13.

(1999) 19 Cal.4th 1206, 1223 [crime is punishable as a felony only when committed under conditions or circumstances likely to produce great bodily harm or death].) Misdemeanor child endangerment is thus a lesser included offense of felony child endangerment. (*People v. Sheffield* (1985) 168 Cal.App.3d 158, 166, overruled on another ground in *People v. Flood* (1998) 18 Cal.4th 470, 484, 490, fn. 12.)

Defendant concedes he endangered the children by his conduct but argues he did not do so under conditions likely to produce great bodily harm or death. Defendant contends a properly instructed jury would have opted to convict him of the lesser offense.[11]

Felony child endangerment requires "the act was done 'under circumstances or conditions likely to produce great bodily harm or death,' i.e., under conditions 'in which the probability of serious injury is great.' " (*People v. Sargent*, *supra*, 19 Cal.4th at p. 1223; *People v. Chaffin* (2009) 173 Cal.App.4th 1348, 1352; contra, *People v. Wilson* (2006) 138 Cal.App.4th 1197, 1204 [" 'likely' as used in section 273a means a substantial danger, i.e., a serious and well-founded risk, of great bodily harm or death"].) Section 273a encompasses "both direct and indirect conduct" towards a child. (*People v. Burton* (2006) 143 Cal.App.4th 447, 454.) Where the harm to a child "is indirectly inflicted, the requisite mental state is criminal negligence. ([Citation]; see also § 20 [in every crime there must exist act and intent, or act and criminal negligence].) Criminal negligence is aggravated, culpable, gross or reckless conduct that is such a departure

_____

produce great bodily harm or death; [¶] AND [¶] 3. The defendant was criminally negligent when he caused or permitted the child to be endangered.

[11] Defendant asked the trial court to instruct the jury on the lesser offense of misdemeanor child endangerment. The court denied the request stating: "Recognizing the difference between the felony and the misdemeanor level involving child endangerment, the difference in this case is not the difference between the particular statutes as much as it is whether the defendant is the individual who actually discharged the firearm, which is a factual decision for this jury to make."

14.

from that of the ordinarily prudent or careful person under the same circumstances as to be incompatible with a proper regard for human life. [Citation.] A defendant may be deemed to be criminally negligent if a reasonable person in his position would have been aware of the risk." (*Ibid.*; *People v. Valdez* (2002) 27 Cal.4th 778, 789–790.)[12]

It is undisputed that defendant introduced the gun into a volatile situation. Jane Doe 1 testified that defendant pulled the gun from his pants and Jane Doe 4 testified that he began loading the gun at the kitchen table. It is axiomatic that a gunshot may cause serious injury or kill a person, especially in a small space.[13] The bullet's extended trajectory demonstrates the damage a gunshot can inflict. The holes in the apartment show the bullet went through the closet wall, into the kitchen and exited out of the residence. Deputy Gonzalez confirmed that a bullet can ricochet or cause debris when it hits something. He further acknowledged that a bullet's trajectory may be altered when it hits an object. Even if defendant did not shoot the gun directly at the children, firing a gun in such a small space with four children present sufficed to create circumstances likely to produce great bodily harm. A reasonable person would be aware of the risk of shooting a gun in these circumstances.

We are unpersuaded there is substantial evidence such that a reasonable juror would find that defendant committed misdemeanor child endangerment but not felony child endangerment. (*Breverman*, *supra*, 19 Cal.4th at p. 162.) The trial court thus did not err in failing to provide instructions on the lesser offense.

---

**12** The jury instructions stated that the "phrase *likely to produce* great bodily harm or death means the probability of great bodily harm or death is high." (CALCRIM No. 821.) The jury was further instructed that "[a] person acts with criminal negligence when: [¶] 1. He or she acts in a reckless way that is a gross departure from the way an ordinarily careful person would act in the same situation; [¶] 2. The person's acts amount to disregard for human life or indifference to the consequences of his or her acts; [¶] AND [¶] 3. A reasonable person would have known that acting in that way would naturally and probably result in harm to others."

**13** Defendant and Jane Doe 1's apartment consisted of one bedroom, one bathroom, the kitchen, the living room and one closet.

15.

## III. Ineffective Assistance of Counsel

Defendant contends he received ineffective assistance of counsel for defense counsel's failure to request the court exercise its newly enacted sentencing discretion under Assembly Bill No. 518 (2021−2022 Reg. Sess.) (Assembly Bill 518).

### A. *Sentencing*

Probation recommended a total term of 33 years eight months with the principal term of 18 years (the upper term of nine years doubled per the prior strike) on the assault with a semiautomatic firearm (count 1).[14]  The probation officer recommended the trial court find no circumstances in mitigation and recommended the trial court find true four circumstances in aggravation:  defendant's prior convictions as an adult are numerous (Cal. Rules of Court, rule 4.421(b)(2)); defendant was on misdemeanor probation for a domestic violence battery against the same victim when the crime was committed (*id*. at rule 4.421(b)(4)); defendant's prior performance on probation was unsatisfactory in that he failed to abide by the set terms (*id*. at rule 4.421(b)(5)); and defendant had warrants for his arrest in three other cases at the time he committed the offenses (*id*. at rules 4.421(c), 4.408).

Prior to sentencing, defense counsel filed a sentencing statement with five arguments regarding defendant's sentence:  1) the trial court should dismiss defendant's prior "strike" pursuant to *Romero*; 2) the court should dismiss defendant's prior serious felony conviction pursuant to *Romero*; 3) the court should dismiss the enhancements pursuant to recent amendments to section 1385; 4) aggravating factors have not been proven to justify the upper term in sentencing per recent amendments to section 1170; and 5) consecutive sentencing is not warranted.  The People filed a response to

---

[14] The balance of the recommended term was:  five years for the prior serious felony conviction enhancement on count 1; on counts 3 through 6, 32 months (one-third of the midterm) on each count to be served consecutive to count 1; on count 7, the upper term of six years stayed per section 654; on count 8, the upper term of six years stayed per section 654; and on count 9, one year to be served concurrently.

defendant's sentencing statement requesting the court impose the greatest sentence possible.

On March 17, 2022, the trial court held a sentencing hearing. The court acknowledged "having received, read and considered" the probation officer's report, defendant's sentencing statement and the People's response. The court asked defense counsel if there was anything he would like to add:

> "THE COURT: …[Defense counsel], do you have anything that you would like to add to the written motion already received?
>
> [Defense counsel]: No, your Honor. I just would like to point out that I'm asking to strike the strike under Romero and also to strike that enhancement under the recent changes to Penal Code Section 1385.

The court then denied defendant's *Romero* motion to strike his prior felony conviction. In denying the *Romero* motion, the court "considered not only the circumstances of this offense which has resulted in the defendant being convicted of assault with a firearm, but also the defendant's criminal history." The court detailed defendant's lengthy criminal career and violations of probation. The court deemed probation's recommendation "extremely reasonable" while acknowledging that probation was not present during the trial and must rely on the investigative reports. The court struck the five-year enhancement for sentencing purposes, as well as the sentences on the four counts of child endangerment.

The court again asked defense counsel if there was anything he would like to add to the written motion already received. Defense counsel again declined. The court then discussed defendant's sentence:

> "THE COURT: Counsel, for purposes of determining the appropriate triad to implement, the Court must consider circumstances in mitigation versus circumstances in aggravation, and in support of finding the upper term is appropriate, the Court has considered the defendant's criminal history. Specifically, his prior convictions as an adult are numerous. He was on misdemeanor probation for a domestic-violence-related battery against the same victim when this crime was committed. His prior performance in

17.

the deferred entry of judgment and on misdemeanor and felony probation has been unsatisfactory in that he failed to abide by set terms and continued to reoffend. [¶] Specifically related to circumstances in aggravation, when considering the defendant's criminal history, which is similar to what the Court considered in denying the Romero motion, are that the defendant has had prior domestic violence convictions, one from 2008 and one from 2018. The 2018, as stated in the probation officer's report and consistent with representations during the course of evidence, is that the victim in 2018 was the same victim here in 2021. [¶] For those reasons, the Court does find that the upper term in a determinate sentencing scheme is appropriate where applicable.

The court also explained the rationale for striking the sentences on the child endangerment counts. The court declared defendant's sentence to be: 18 years (the upper term of nine years doubled per the prior strike) on count 1; the upper term of six years on count 7 stayed pursuant to section 654; the upper term of six years on count 8 stayed pursuant to section 654; and one year on count 9 to run concurrently with the sentence on count 1. After imposition of defendant's sentence, the court asked both attorneys if there was anything further. Both parties confirmed there was nothing further.

**B.** *Applicable Law and Analysis*

A criminal defendant has the right to the effective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 686 (*Strickland*).) To prevail on an ineffective assistance of counsel claim, defendant must prove: 1) trial counsel's performance was deficient and 2) counsel's deficient performance prejudiced defendant. (*Id.* at p. 687.) Deficient performance is established by showing that "counsel's representation fell below an objective standard of reasonableness" "under prevailing professional norms." (*Id.* at pp. 687–688.) To show prejudice, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 694.)

Defendant contends that if defense counsel had advocated for a shorter sentence under the newly amended section 654, the trial court would have sentenced defendant to

a shorter term per the illegal firearm (count 7) or ammunition possession (count 8) charges. Effective January 1, 2022, Assembly Bill 518 modified section 654, subdivision (a) to permit an act or omission punishable under two or more provisions of law to "be punished under either of such provisions." (Stats. 2021, ch. 441, § 1.) Prior to this modification, "the sentencing court was required to impose the sentence that 'provides for the longest potential term of imprisonment' and stay execution of the other term. (Pen. Code, § 654, former subd. (a).) As amended by Assembly Bill 518, Penal Code section 654 now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence." (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.)

Defendant was sentenced on March 17, 2022. The amended section 654 had thus been in effect for approximately two and a half months when he was sentenced.

Defendant argues the record shows the trial court proceeded with sentencing on the assumption that it lacked discretion and defense counsel was ineffective for failing to advise the court of and argue for use of its new discretion per amended section 654. " 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, … the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) Remand is unnecessary if the trial court was aware of its sentencing discretion or "if the record is silent concerning whether the trial court misunderstood its sentencing discretion. Error

may not be presumed from a silent record." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228–1229.)

The trial court discussed in detail its reasoning for selecting the chosen sentence including the rationale for denying defendant's *Romero* motion, striking the prior serious felony conviction enhancement, selecting the upper term sentence, and striking the sentences on the child endangerment counts. Pursuant to the amended version of section 654, the court had the discretion to punish defendant under any of the applicable sentencing provisions on the remaining counts. The court did not say it was imposing the longer sentence for the assault because it was required to do so under former section 654. Nothing in the record suggests the court was unaware of its new discretion. We do not presume the trial court misunderstood its new sentencing discretion where the record is silent.[15] (*People v. Brown*, *supra*, 147 Cal.App.4th at pp. 1228–1229.)

The court could have lessened defendant's sentence by granting defendant's *Romero* motion to dismiss his prior strike, but it chose not to do so. The court was particularly troubled by defendant's extensive criminal history and his prior convictions for domestic violence against the same victim assaulted in this case. The probation officer's report identified no mitigating circumstances but four aggravating circumstances.[16] The record reflects the court thoroughly considered the appropriate sentence including by exercising its discretion to strike the sentences on the child endangerment counts. The court's discussion of its sentencing decision does not show a reasonable probability of a different outcome if defense counsel had also argued for

---

[15] While the probation officer's report does not reference Assembly Bill 518, the trial court is presumed to be aware of its sentencing discretion.

[16] Defendant concedes the "upper term sentence was legally justified" because his "priors were proven through certified court records." (See § 1170, subd. (b)(2).) The People's exhibit No. 17 was a certified copy of defendant's "rap sheet" reflecting his prior misdemeanor and felony convictions. The People's exhibit No. 18 was a certified court docket for the 2004 felony conviction.

imposition of a lesser sentence per amended section 654. (*Strickland*, *supra*, 466 U.S. at p. 694.)

Defendant takes issue with the arguments defense counsel chose to advance in the sentencing statement and argues there was no tactical reason for defense counsel's failure to request the trial court exercise its new discretion under amended section 654. "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance .…" (*Strickland*, *supra*, 466 U.S. at p. 689.)

Defendant has not overcome the strong presumption that defense counsel acted reasonably in his advocacy at sentencing.[17] The sentencing statement shows defense counsel was aware of recent statutory amendments to sections 1170 and 1385 (also

---

[17] Defendant relies on *People v. McDaniels* (2018) 22 Cal.App.5th 420 and *People v. Johnson* (2019) 32 Cal.App.5th 26 in support of his contention that remand is required for resentencing. Both cases are inapposite because both involved statutory amendments affecting sentencing discretion that became effective *after* sentencing, unlike the amended section 654 which was already effective when defendant was sentenced. (*People v. McDaniels*, at p. 425 [remand necessary for resentencing due to subsequent passage of Senate Bill No. 620 (2017–2018 Reg. Sess.) amending section 1385 to permit striking of firearm enhancements]; *Johnson*, *supra*, 32 Cal.App.5th at pp. 67–69 [remand necessary for resentencing due to subsequent passage of Senate Bill No. 620 and Senate Bill No. 1393 (2017–2018 Reg. Sess.) permitting striking of serious felony convictions].) Defendant also relies on an unpublished portion of *People v. Warner* (2019) 35 Cal.App.5th 25. Citation to unpublished opinions of the Court of Appeal is not permitted absent certain circumstances not applicable here. (Cal. Rules of Court, rule 8.1115.)

effective January 1, 2022),[18] and made arguments regarding defendant's sentence related to those amendments. This reveals defense counsel *did* investigate the applicable law regarding defendant's sentence including recent statutory changes. (*People v. Ledesma* (1987) 43 Cal.3d 171, 222 [counsel's primary "duty is to investigate the facts of his client's case and to research the law applicable to those facts"].) Defense counsel requested the court strike the five-year enhancement and not impose consecutive sentences; both requests the court followed in its sentence.

The amended section 654 broadened the trial court's sentencing discretion where there is more than one possible punishment but did not compel the court to select a particular sentence. Considering the court's focus on defendant's prior violence against the same victim and prolific criminal history in selecting the upper term for the assault, there is not a reasonable probability that the court would have been persuaded to instead impose a lesser punishment on one of the possession charges.

## DISPOSITION

The judgment is affirmed.

POOCHIGIAN, Acting P. J.

WE CONCUR:

FRANSON, J.

SNAUFFER, J.

---

[18] Section 1170 was amended by Senate Bill No. 567 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3) and section 1385 was amended by Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1).