[No. D046198. Fourth Dist., Div. One. Apr. 25, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
TANYA WILSON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[1]]**

---

[1] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of DISCUSSION parts A., C. and D.

**COUNSEL**

Laurel Nelson Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela Ratner Sobeck and David Delgado-Rucci, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BENKE, J.**—Tanya Wilson was convicted of one count of first degree burglary, two counts of felony child endangerment and one count of contributing to the delinquency of a minor. It was also found true Wilson served a prior term of imprisonment within the meaning of Penal Code[2] section 667.5, subdivision (b). She was sentenced to a prison term of eight years, four months. Wilson appeals, arguing there is insufficient evidence to support her convictions for child endangerment, the trial court erred in failing to instruct sua sponte on the lesser offense of misdemeanor child endangerment, the trial court erred in failing to give a unanimity instruction as to one of the child endangerment counts, only one count of child endangerment should have been charged and the trial court erred in imposing aggravated terms.

---

[2] All further statutory references are to the Penal Code unless otherwise specified.

In the unpublished portion of this opinion we conclude the trial court erred in failing to instruct sua sponte concerning misdemeanor child endangerment as a lesser included offense of felony child endangerment.

## FACTS

### A. *Prosecution Case*

Appellant lived with her 10-year-old son in a house near 50th Street and Polk Avenue in San Diego. On September 7, 2004, appellant told her son they were going to "do a 211" at a neighbor's house. The young man was upset and almost cried. Appellant told him to "stop being a punk." She told him that when he went to jail "all those men in there are going to rape you." She called him "a bitch," "faggot" and "mother fucker." The boy began to cry.

Appellant and her son went next door. Appellant, too large to go through the neighbor's open bathroom window, put her son on her back and pushed him through. The boy went through head first, then turned around so he could jump into the bathtub. Appellant's son, as he had been instructed, opened the front door and admitted appellant. He then went to the front yard. As appellant came out of the residence, a ring fell from her hand.

Once home, appellant, angry with her son, choked him and pushed him hard into the refrigerator. He began to cry and fell down. Appellant told him to "[g]et up and stop acting like a punk." Appellant stood her son up and then hit the wall about four inches from his head with a mop.

Appellant's neighbor checked her residence and discovered a ring missing. The ring was never found.

Appellant told officers she was the only one who took anything from the apartment. Appellant stated she did not want anything to happen to her son and she was the only one who stole things.

### B. *Defense Case*

Appellant's 12-year-old son testified his brother frequently lied.

## DISCUSSION

### A. *Instruction on Misdemeanor Child Endangerment*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante*, page 1197.

## B. *Sufficiency of Evidence*

Appellant argues the evidence was insufficient to support her conviction of felony child endangerment in both counts two and three. She argues her actions in neither count produced circumstances or conditions "likely to produce great bodily injury or death" and if anything, she was guilty only of misdemeanor child endangerment. While we have reversed these convictions, it is necessary we resolve appellant's claim there was insufficient evidence to support them.

In determining whether the evidence is sufficient to support the verdict, we review the entire record viewing the evidence in the light most favorable to the judgment and presuming in support of the verdict the existence of every fact the jury could reasonably deduce from the evidence. The issue is whether the record so viewed discloses evidence that is reasonable, credible and of solid value such that a rational trier of fact could find the elements of the crime beyond a reasonable doubt. (*People v. Carter* (2005) 36 Cal.4th 1114, 1156 [32 Cal.Rptr.3d 759, 117 P.3d 476].)

### 1. *Felony Child Endangerment*

■ Section 273a, subdivision (a), provides in part that felony child endangerment occurs when: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered."

Section 273a, subdivision (b), makes it a misdemeanor to engage in the same conduct under circumstances or conditions other than those likely to produce great bodily injury.

Appellant claims there was insufficient evidence of child endangerment because the circumstances or conditions on which the prosecution rested its case were, as a matter of law, not *likely* to produce great bodily injury or death.

### 2. *The Law of Likelihood*

To address appellant's claim of insufficient evidence, it is necessary to understand what is meant in section 273a, subdivision (a), by the phrase "likely to produce great bodily injury or death." In *People v. Superior Court*

(*Ghilotti*) (2002) 27 Cal.4th 888 [119 Cal.Rptr.2d 1, 44 P.3d 949] (*Ghilotti*) the court provided an in-depth review of the troublesome word "likely." *Ghilotti* was concerned with the meaning of the word "likely" in the context of the Sexually Violent Predators Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.). That act allows the civil commitment of certain sex offenders after their terms of imprisonment when their current mental disorders makes them "likely" to reoffend if released. (*Ghilotti, supra,* 27 Cal.4th at p. 893; see also *People v. Roberge* (2003) 29 Cal.4th 979, 985–988 [129 Cal.Rptr.2d 861, 62 P.3d 97]; *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 255 [127 Cal.Rptr.2d 177, 57 P.3d 654].)

The parties in *Ghilotti* had very different views on what "likely" meant in the SVPA context. Ghilotti argued in that context "likely" meant "highly likely" or at least "more likely than not." The People disagreed, contending the word "likely" meant " 'a significant chance, not minimal; something less than "more likely than not" and more than merely "possible." ' " (*Ghilotti, supra,* 27 Cal.4th at pp. 915–916.)

In confronting this disagreement, the court noted the word "likely" as a legal term is used flexibly to cover a range of expectations from possible to probable. The court first noted that while it is true the word "likely" in dictionaries of general English usage is often defined as " 'having a better chance of occurring than not,' " the legal use of the term is broader. (*Ghilotti, supra,* 27 Cal.4th at p. 916.) The court noted at page 917: "For example, a legal dictionary states that while 'likely . . . [m]ost often . . . indicates a degree of probability greater than five on a scale of one to ten . . . it may also refer to a degree of possibility that is less than five on that same scale.' (Garner, A Dict. of Modern Legal Usage (2d ed. 1995) p. 530, col. 1.) This same source refers the reader to the definition of 'probable' (*ibid.*), there explaining that the words 'probable,' 'likely,' and 'possible' represent, in order of *decreasing strength,* gradations of the relative chance that something might happen, such that 'likely' 'is "a strong *'possible'* but a weak *'probable.'* " [Citation.]' (*Id.,* p. 693, col. 2 to p. 694, col. 1, italics in original.)

"One legal thesaurus includes, as synonyms for 'likelihood,' the following: 'chance,' 'conceivability,' 'fair chance,' 'fair prospect,' 'plausibility,' 'possibility,' 'potential,' 'reasonable chance,' and 'well-grounded possibility.' (Burton, Legal Thesaurus (2d ed. 1992) p. 320, col. 2.) Another legal dictionary/thesaurus indicates a parallel range of meaning, citing 'inclined,' 'conceivable,' and 'possible' among the synonyms for 'likely.' (Stratsky, West's Legal Thesaurus/Dict. (Special Deluxe Ed. 1986) p. 459.)

"Legal usage in the United Kingdom reflects similar flexibility, depending on the context in which the word is used. A prominent British reference

suggests that ' "[l]ikely" may have a range of definitions from possible to probable . . . .' (2 Greenberg & Millbrook, Stroud's Judicial Dict. of Words and Phrases (6th ed. 2000) p. 1476, col. 2.)"

The court in *Ghilotti* noted: "California decisions indicate a varied contextual understanding of the word 'likely.' " (*Ghilotti, supra,* 27 Cal.4th at p. 917.) Using cases dealing with child endangerment as one example, the court observed: "In *People v. Sargent* (1999) 19 Cal.4th 1206 [81 Cal.Rptr.2d 835, 970 P.2d 409], we said in passing that the felony child endangerment statute, which punishes a caretaker's willful abuse or neglect of a child under ' " 'circumstances . . . likely to produce great bodily harm or death' " ' (Pen. Code, § 273a, subd. (a)) is ' "intended to protect a child from an abusive situation in which the probability of serious injury is great." ' (*Sargent, supra,* 19 Cal.4th at p. 1216, quoting *People v. Jaramillo* (1979) 98 Cal.App.3d 830, 835 [159 Cal.Rptr. 771].) But *People v. Hansen* (1997) 59 Cal.App.4th 473 [68 Cal.Rptr.2d 897] indicated this statute is satisfied when the child is placed in a situation where a serious health hazard or physical danger is 'reasonably foreseeable' (*id.* at p. 479), as where the caretaker stores a loaded gun in a home occupied by children without denying the children access to the weapon (*id.* at p. 480)." (*Ghilotti, supra,* 27 Cal.4th at p. 917.)

As a further example of the varied contextual understanding of the term "likely" in California cases, the court in *Ghilotti* cited *People v. Savedra* (1993) 15 Cal.App.4th 738 [19 Cal.Rptr.2d 115]. There the defendant was charged with possessing a deadly weapon in a jail. The court instructed a deadly weapon was any instrument or object likely to cause death or great bodily injury. When the jury asked if "likely" meant more probable than not or merely possible, the trial court replied that "likely" referred to the "potential" for use as deadly weapon. The Court of Appeal agreed, noting that although "likely" most often means "more likely than not," the word has a broader meaning in connection with a statute seeking to protect inmates and jail personnel from armed attack. (*Ghilotti, supra,* 27 Cal.4th at pp. 917–918.)

After giving other examples of how context affects the use of the word "likely" in various legal settings, the court gave examples of statutes in which the Legislature specifically used the term "more likely than not." The court concluded that the mere use of the word "likely" in any given context was not proof the Legislature intended it to mean "more likely than not." The court stated it was necessary to look to the context of legislation to determine what meaning the Legislature intended in using the term "likely." (*Ghilotti, supra,* 27 Cal.4th at p. 918.)

The court noted that the purpose of the SVPA was to protect the public from a limited group of persons, previously convicted for violent sex

offenses, who because of a current mental disorder presented a high risk of reoffense. The court concluded that in the SVPA context, "likely to reoffend" meant more than a mere possibility of reoffense but did not require that the chance of reoffense be better than even. Rather, the test was whether the person presented a *"substantial danger—. . . a serious and well-founded risk*—of [reoffense]." (*Ghilotti, supra,* 27 Cal.4th at pp. 916, 922.)

### 3. *Likelihood in the Context of Section 273a*

No reported case after *Ghilotti* has dealt with the varying definitions of the word "likely" in the context of section 273a, subdivision (a). The Supreme Court's reference to its statement in *Sargent* (*People v. Sargent* (1999) 19 Cal.4th 1206 [81 Cal.Rptr.2d 835, 970 P.2d 409]) that "likely" means a "probability of serious injury" is dismissive. The statement in *Sargent* is dicta and the court's approach to it in *Ghilotti* indicates the definition in *Sargent* is not to be taken as definitive.

Nor did the court in *Ghilotti* embrace the definition of "likely" in the section 273a context used in *Hansen*, i.e., that a serious health hazard or physical danger is "reasonably foreseeable." The citations of *Sargent* and *Hansen* in *Ghilotti* were not to address the meaning of the term "likely" in section 273a but merely to demonstrate the flexible use in the law of that term.

We conclude that given the interest protected, i.e., the lives of highly vulnerable children, the definition of "likely" in the context of section 273a is not that death or serious injury is probable or more likely than not. While we understand it was developed in a different legal context, we nonetheless believe that adaptation of the definition of "likely" as used in the SVPA context is appropriate here. We thus conclude that "likely" as used in section 273a means a substantial danger, i.e., a serious and well-founded risk, of great bodily harm or death. We believe in the context of child endangerment this definition of the term "likely" draws a fair balance between the broad protection the Legislature intended for vulnerable children and the level of seriousness required for a felony conviction.

### 4. *Count Two*

Count two was a charge of felony child endangerment arising from appellant making her 10-year-old son go through the open window of a neighbor's house to facilitate her burglary of the residence.

The prosecutor argued the circumstances or conditions likely to produce great bodily harm or death were (1) that appellant's son was small, the

window high and the possibility of a fall into the bathtub with a resulting serious injury likely and (2) requiring a child to enter a locked house through a window to facilitate a burglary was highly dangerous.

■ A child entering a neighbor's locked residence in order to help commit a burglary is indeed a highly dangerous undertaking that exposes the child to a number of serious physical dangers, e.g., someone in the home might react violently to the trespass, etc. Such circumstances reasonably allowed a finding that it was "likely," i.e., there existed a substantial danger, that is, a serious and well-founded risk, of great bodily harm or death to the child in appellant's actions.

The evidence was sufficient to convict appellant of felony child endangerment as to count 2.

### 5. *Count Three*

Count three was a charge of felony child endangerment that allegedly occurred after the burglary when appellant and her son returned to their house. Appellant, angry with her son, choked him, threw him against the refrigerator and then hit the wall about four inches from his head with a mop. Appellant argues the lack of evidence of injury and the relatively small amount of force she used in assaulting her son establish the evidence was insufficient to support her conviction for felony child endangerment.

■ Actual physical injury is not an element of felony child endangerment. (*People v. Valdez* (2002) 27 Cal.4th 778, 784 [118 Cal.Rptr.2d 3, 42 P.3d 511].) In this case, appellant, a grown woman, choked her 10-year-old son, threw him against a refrigerator and then hit the wall close to his head with a mop. A jury could conclude these were circumstances or conditions likely to produce great bodily harm or death.

The evidence was sufficient to convict appellant of felony child endangerment in count three.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1197.

## DISPOSITION

Counts two and three are reversed; conviction on all other counts is affirmed.[3]

McConnell, P. J., and Irion, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 16, 2006, S143916.

---

[3] Given this resolution of the case it is not necessary we confront appellant's additional claims of error.