Filed 9/9/22  P. v. Wallace CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SIDNEY EDWARD WALLACE,<br><br>Defendant and Appellant. | C093971<br><br>(Super. Ct. No. 20FE012816) |

Defendant Sidney Edward Wallace has two children, Si.W. and Sin.W., with T.B. Defendant was staying with T.B. and their two children when he got into an altercation with T.B. one day that escalated into him hitting his two children and taking a knife from Si.W. in the process and possibly wielding it against Si.W.  A jury found defendant guilty of felony child abuse likely to cause great bodily harm or death against Si.W. (count two) and misdemeanor child abuse against Sin.W (count four).  It acquitted defendant of assault with a deadly weapon against Si.W. (count one) and of assault by means of force

1

likely to produce great bodily injury against T.B (count three).  Defendant was sentenced to four years in prison.

On appeal, defendant contends the trial court committed prejudicial error in not instructing the jury with respect to count two on the lesser included offense of child abuse under circumstances other than those likely to cause great bodily harm or death.  He also contends the trial court erred in not staying or striking the restitution fines against him.

We reverse defendant's conviction for count two.  In all other respects, the judgment is affirmed.

## I. BACKGROUND

Defendant was charged with assault with a deadly weapon against Si.W. (Pen. Code, § 245, subd. (a)(1)—count one)[1], child abuse likely to cause great bodily harm or death against Si.W. (§ 273a, subd. (a)—count two), assault by means of force likely to produce great bodily injury on T.B. (§ 245, subd. (a)(4)—count three), and misdemeanor child abuse against Sin.W. (§ 273a, subd. (b)—count four).  It was further alleged defendant had a prior strike.

At trial, T.B. testified regarding the incident, which occurred on August 12, 2020.  At that time, she was letting defendant sleep on her couch because he needed a place to stay, but they were not dating.  The incident started when defendant walked into T.B.'s room after she got out of the shower; he was smiling with a boxing glove on his hand and started hitting her in the head after she told him to get out.  She said it was not hard enough to be painful, but she did get a headache later.

T.B. said Sin.W. was in the room and Sin.W. told defendant to stop, but then defendant started to "whoop her" by hitting Sin.W. on her buttocks.  T.B. then walked out of the room to change out of the towel she had been wearing and heard her daughter

---

[1] Further undesignated statutory references are to the Penal Code.

2

crying. T.B. saw her son holding a knife when she left her room and told him to put the knife down. T.B. also testified defendant had never before been violent with her or the children.

Sin.W., who was 13 at the time of trial, testified that defendant came into the room she shared with T.B. and started punching T.B. She said she thought defendant was playing so they were laughing, but then he started punching T.B. in the face and Sin.W. told defendant to stop. Defendant then stopped, took off his glove, and "whooped" Sin.W., hitting her in the buttocks around seven to 10 times, screaming random words, and accusing her of sneaking out of a window. Defendant also punched her in the eye, but she thought it was a "reflex," because she didn't "see why he would do that."

Sin.W. testified the hitting hurt her, leaving welts on her, and she was then afraid of defendant. She said she also saw defendant punch her brother Si.W. in the face, but she did not see defendant pick up a knife, instead she thought defendant took it from her brother. But she also remembered calling 911 and telling them defendant was holding a knife to Si.W.'s neck.

The prosecutor played a recording of Sin.W.'s 911 call. On the call, Sin.W. said: "My father's being very abusive to my mother and my brother. He grabbed a knife and he's holding it at my brother's neck," and, "Please hurry. Please hurry. Please hurry." She testified that during the call, she could see defendant had one hand on Si.W. and the other hand had the knife away from Si.W., but she couldn't see what he was doing, just that he "was trying to do something." She also had not seen defendant with the knife before this moment, nor did she see defendant chasing Si.W. with the knife.

Si.W., who was 15 at the time of trial but was 14 at the time of the incident, also testified and said he went into his sister's and mom's room because he heard his mom screaming. When he entered, he saw his sister getting a "whooping," meaning defendant was smacking her on her buttocks. Si.W. said defendant then started hitting T.B. with both hands, one had a glove on it and one did not. Si.W. tried to stop defendant when he

3

walked in, but then defendant came at Si.W. and started punching him repeatedly in the face and chest. They started to back up through the kitchen into the living room. In the process, Si.W. grabbed a knife from the kitchen counter because he didn't know what defendant would do, but defendant quickly took the knife from Si.W. and started punching him again. Si.W. said defendant dropped the knife and didn't believe defendant ever threatened him with the knife. He also said defendant never held the knife to his throat and only had it in his hand to take it away from Si.W. Si.W. testified he felt sore in the chest and his face was tender and red with some scratches but told police he did not need medical attention.

Officer Morgan Becker, one of the officers who came to the home, testified when she arrived T.B., Sin.W., and Si.W. all looked visibly shaken and the children were crying. The recording from Officer Becker's body camera was shown to the jury. In the video, T.B. and Sin.W. described that defendant entered the room and started to hit T.B. like he was playing; then he got serious, started hitting her harder, punched Sin.W. in the face, and then started punching Si.W. Officer Becker asked Si.W. if defendant held the knife to his throat and he said: "Not to my throat but he was like -- he had it like . . . you got to stop playing." But Sin.W. immediately said, "he had it right to your neck," and Si.W. responded, "So, yeah, he did." Si.W. said on the video he felt like defendant was threatening him with the knife and was calling him names, saying, "you know stop fucking playing with me."

Officer Becker also testified she examined the children that day and found red welts on Sin.W.'s buttocks and Si.W.'s face was red and swollen, but by the time the crime scene technician arrived, at least an hour later, most of the redness from both the children had faded. The technician said he did not see any redness on Si.W.'s face.

Defendant testified in his defense. Defendant said he started playfully tapping T.B. when she got out of the shower because he was supposed to shower before her. He said it escalated when T.B. hit him back three or four times and then bit him and he bit

4

her back. He then started to hit Sin.W. on the buttocks after she jumped on defendant. He explained he was disciplining her because she had been sneaking out. He then saw Si.W. standing with a "knife in two hands," and Si.W. said, "what the fuck, dad?" Defendant grabbed the knife, threw it in the sink, and then "socked him in his chest probably like five times."

Defendant, who said he was "[v]ery strong" and about six feet tall and 200 pounds, explained he didn't hit Si.W. as hard as he could, even though Si.W. was crying after the punches. Punching Si.W. was defendant's "first reaction. It was, like, why would you pull a knife on your father? So it was, like, another form of discipline." He made up with his son but then said something accusing Si.W. of homosexual behavior and "it sparked something in him and he ran towards the kitchen." Defendant beat him there and grabbed the knife away again and either put it back in the sink or in the dishwasher, and then slapped Si.W. Defendant then yelled at T.B. and Si.W. and left the house.

The jury was not instructed on any lesser included offenses for any of the charged counts. After the jury notified the court it had reached a verdict on all four counts, but without indicating the verdicts, the trial court stated on the record outside the presence of the jury that there had been a discussion with counsel off the record regarding whether there should be any lesser included offenses presented to the jury for the first three counts. The prosecutor and defense counsel both confirmed neither was requesting instructions on lesser included offenses.

The jury found defendant guilty of felony child abuse likely to cause great bodily harm against Si.W. (count two) and misdemeanor child abuse against Sin.W. (count four) but not guilty of assault with a deadly weapon against Si.W. (count one) and assault by means of force likely to produce great bodily injury against T.B. (count three).

On April 16, 2021, the trial court sentenced defendant to two years (low term) for the child abuse conviction against Si.W., doubled for a prior strike, and 30 days

5

concurrent for the child abuse conviction against Sin.W. The trial court also imposed the mandatory minimum restitution fine of $300 (§ 1202.4) and a $300 suspended parole revocation restitution (§ 1202.45). But based on defendant's representation of an inability to pay, the trial court struck all other fines and fees.

Defendant timely appealed.

## II. DISCUSSION

### A. *Lesser Included Offense Instruction*

Defendant contends the trial court erred by not sua sponte instructing the jury on the lesser included offense for count two of child abuse in circumstances other than those likely to cause great bodily harm or death. He further argues this error was prejudicial because the evidence supported the lesser offense.

The People contend defendant waived his assertion of instructional error under the doctrine of invited error. A claim of error based on the trial court's not instructing on a lesser included offense "may be waived under the doctrine of invited error if trial counsel both ' "intentionally caused the trial court to err" ' and clearly did so for tactical reasons. [Citation.] Invited error will be found, however, only if counsel expresses a deliberate tactical purpose in resisting or acceding to the complained-of instruction." (*People v. Souza* (2012) 54 Cal.4th 90, 114.) "The existence of some conceivable tactical purpose will not support a finding that defense counsel 'invited' an error in instructions. The record must reflect that counsel had a deliberate tactical purpose." (*People v. Avalos* (1984) 37 Cal.3d 216, 229.)

Here, the record only shows defendant did not request any instructions on lesser included offenses. At no point did defense counsel state a tactical purpose for not requesting the instruction. While defendant might have conceivably had a tactical purpose for not requesting the instruction, such a conceivable purpose is insufficient. (*People v. Avalos, supra*, 37 Cal.3d at p. 229.) Defendant did not invite error and therefore did not waive his claim of instructional error.

6

With respect to the merits of defendant's claim, the People agree the trial court was obligated to instruct on the lesser included offense for count two, but argue the error was not prejudicial.

Trial courts have a sua sponte duty to instruct on general principles of law applicable to the case, including instructions on lesser included offenses. (*People v. Taylor* (2010) 48 Cal.4th 574, 623.) " '[A] lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser.' " (*People v. Smith* (2013) 57 Cal.4th 232, 240.) But the lesser included offense must be supported by substantial evidence to support the instruction, i.e., evidence from which a jury of reasonable persons could conclude that the lesser offense, but not the greater, was committed. (*People v. Cruz* (2008) 44 Cal.4th 636, 664.) We review de novo the trial court's failure to instruct on a lesser included offense, considering the evidence in the light most favorable to the defendant. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.)

We agree with the parties the trial court erred in not instructing the jury on child abuse of Si.W. under circumstances other than those likely to produce great bodily harm or death. Under section 273a, subdivision (a), it is a felony to inflict "unjustifiable physical pain or mental suffering" on a child "under circumstances or conditions likely to produce great bodily harm or death." Whereas, under subdivision (b), it is a misdemeanor to inflict "unjustifiable physical pain or mental suffering" on a child "under circumstances or conditions *other than those* likely to produce great bodily harm or death." (§ 273a, subd. (b), italics added.) The misdemeanor offense under subdivision (b) is a lesser included offense because the elements required to commit the crime are necessarily included within the elements of the felony, with the only difference being the enhanced violence of circumstances likely to produce great bodily harm or death.

7

(*People v. Moussabeck* (2007) 157 Cal.App.4th 975, 980 ["Misdemeanor child abuse (§ 273a, subd. (b)), is a lesser included offense of felony child abuse (§ 273a, subd. (a))"].)

We also agree with the parties there was substantial evidence supporting the lesser instruction. In the context of section 273a, "likely" means "a substantial danger, i.e., a serious and well-founded risk." (*People v. Wilson* (2006) 138 Cal.App.4th 1197, 1204.) Whereas great bodily harm or death means a " ' "significant or substantial injury and does not refer to trivial or insignificant injury." ' " (*People v. Clair* (2011) 197 Cal.App.4th 949, 954.) Factors considered in making this determination include: "(1) the characteristics of the victim and the defendant, (2) the characteristics of the location where the abuse took place, (3) the potential response or resistance by the victim to the abuse, (4) any injuries actually inflicted, (5) any pain sustained by the victim, and (6) the nature of and amount of force used by the defendant." (*People v. Clark* (2011) 201 Cal.App.4th 235, 245, fn. omitted.) The victim need not have experienced great bodily injury, but the seriousness of injury "is a factor to consider." (*Id.* at p. 245, fn. 6.)

Examining the evidence in a light most favorable to defendant, defendant testified he did not punch Si.W. hard. There also did not appear to be any significant injury to Si.W. Officer Becker testified to noticing red marks on Si.W.'s face, but by the time the crime scene investigator arrived about an hour later, the redness was gone. Si.W. also said he did not need medical assistance shortly after the attack.

Though a lack of significant injury is not dispositive, Si.W.'s limited injuries could be evidence supporting defendant's testimony that he did not hit Si.W. hard enough to create a serious risk of substantial injury. There was also conflicting evidence on whether defendant wielded a knife, with no witness at trial testifying to seeing defendant threatening Si.W. with the knife. If the jury believed this evidence, which it seemed to have since it acquitted defendant on the weapon charge, this evidence would further limit the risk of substantial injury to Si.W. There is, therefore, substantial evidence a

8

reasonable jury could have found the assault did not rise to the level of the greater offense. Because the evidence was sufficient to support the lesser offense, the trial court should have instructed the jury on misdemeanor child abuse under section 273a.

For similar reasons, we conclude the error was prejudicial.

An error in failing to instruct on a lesser included offense does not warrant reversal unless an examination of the entire cause, including the evidence, discloses that it appears "reasonably probable" the defendant would have achieved a more favorable result had the error not occurred. (*People v. Woods* (2015) 241 Cal.App.4th 461, 474.) "A reasonable probability in this context does not mean more likely than not; it means a reasonable chance and not merely a theoretical or abstract possibility." (*Ibid.*)

Si.W. testified defendant's punches connected with his face and chest but produced only soreness, redness, and some scratches. While it was not necessary for Si.W. to have experienced great bodily injury to support a finding of force likely to produce great bodily injury, a juror could have inferred from this evidence that the amount of force defendant applied was not likely to produce great bodily injury. (See *People v. Sanchez* (1982) 131 Cal.App.3d 718, 733 ["slight reddening of the skin as a result of choking is *not* sufficient [for great bodily injury] even though it would support a finding of *force likely to produce* great bodily injury"].) We therefore conclude it is reasonably probable that the trial court's failure to instruct the jury on the lesser included offense of child abuse in circumstances other than those likely to cause great bodily harm or death affected the outcome on count two. We will reverse defendant's conviction on count two.

B. *Fines and Fees*

Defendant also contends, relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), the trial court erred in implicitly finding it did not have the discretion to strike or stay the restitution fines due to his inability to pay the fine. The People contend forfeiture and otherwise argue a lack of merit to the argument.

9

Defendant forfeited his challenge to the restitution fines because he did not challenge them at the sentencing hearing. The trial court even found defendant had an inability to pay other fines and fees, but defendant failed to ask the trial court to strike the restitution fines. This waived his right to challenge the fees on appeal.

### III. DISPOSITION

Defendant's conviction as to count two is reversed and remanded for retrial if the People so elect within 30 days of the issuance of our remittitur. If the People choose not to retry this count, the trial court shall resentence defendant. The judgment is otherwise affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

ROBIE, Acting P. J.

/S/

_____

HULL, J.