Filed 2/16/24  P. v. Schemensky CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D082339 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN432254) |
| RANDI L. SCHEMENSKY, | |
| Defendant and Appellant. | |


APPEAL from a judgment and an order of the Superior Court of San Diego County, Daniel F. Link, Judge.  Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, and Steve Oetting, Deputy Attorney General, for Plaintiff and Respondent.

# I

# INTRODUCTION

Appellant Randi L. Schemensky and her husband, Jeffrey Frear, raised and homeschooled their nine-year-old son, J.F., in an apartment containing illegally owned firearms, methamphetamine, and drug paraphernalia. One night, Frear accidentally discharged a firearm inside the apartment. The bullet grazed an infant in an adjoining apartment, injuring the child. After a joint trial, a jury found Schemensky (and Frear) guilty of felony child endangerment for endangering the health and safety of J.F. Schemensky was sentenced to a stayed jail term of 180 days and placed on formal probation for four years. At a later probation hearing, the court reduced her conviction to a misdemeanor with four years of informal probation.

Schemensky appeals the judgment and the order imposing four years of informal probation. She asserts insufficient evidence supported her child endangerment conviction. She also claims the court abused its discretion by imposing a four-year informal probation term because the court purportedly was unaware it possessed the discretion to impose a shorter probation term. We reject these contentions and affirm.

# II

# BACKGROUND

A. *Factual Background*

Schemensky and Frear were married to one another. They had a son, J.F. Frear also had a daughter, J.H. (Schemensky's stepdaughter). Schemensky, Frear, 17-year-old J.H., nine-year-old J.F., and J.H.'s friend lived together in a three bedroom apartment in Oceanside. Their apartment shared a wall with an apartment in which J.M. lived with her four-year-old child and infant.

Frear battled a methamphetamine addiction and relapsed shortly before the events described herein. He was a convicted felon as well; therefore, he was unable to own or possess a firearm legally. Nevertheless, Frear owned two firearms. He sourced the parts for the firearms online and assembled them himself. Schemensky was aware he possessed one of the firearms. In addition to owning firearms, Frear possessed bows and arrows, throwing knives, airsoft guns, and swords. According to Frear, he usually stored his firearms and methamphetamine in separate safes located in the master bathroom of the apartment.

Schemensky and Frear occupied and shared the master bedroom and the attached master bathroom. Schemensky homeschooled J.F. during the day and worked in the late afternoon and early evening. Frear was unemployed for the entire four-year period in which the family lived in the apartment. He typically left the master bedroom door open when he was present and, in J.H.'s words, he was at the apartment "almost 24/7." According to Frear and J.H., the master bedroom remained locked when no parent was home. J.H. testified that the family had an unwritten rule the children were not allowed in the master bedroom or master bathroom without a parent present. However, J.H. sometimes observed J.F. playing in the master bedroom while unaccompanied by a parent. J.F. also bathed regularly in the master bathroom while Schemensky was present.

One evening, Frear was testing one of his firearms to make sure the extractor (a gun part that pulls the casing from the barrel) and the ejector (a gun part that ejects the round out of the weapon) worked properly. While he was testing the firearm, he accidentally pulled the trigger and fired a live round of ammunition. At the time, J.M. was seated on the couch in her next door apartment, cradling her sleeping infant. The bullet from Frear's firearm

3

passed through the shared wall between the adjoining apartments and grazed J.M.'s infant on the leg. When J.M. heard the pop of the gunshot, saw the bullet hole in the apartment wall, and realized her infant was bleeding, she grabbed her children, fled the apartment, and called the police.

Meanwhile, Frear realized that he, in his own words, had "really messed up." He rushed his family and J.H.'s friend out of the apartment and they drove to a nearby grocery store. They remained in the grocery store parking lot for a few hours and went to a motel to spend the night. While the rest of the family slept, Frear returned to the family's apartment to retrieve cash. Police detained him as he was en route between the apartment and the motel.

Police obtained a search warrant and searched the family's apartment, which, according to one officer, was "extremely messy," in "disarray," and had "trash everywhere." There was a bullet hole in the shared wall between the apartment and J.M.'s apartment. In the master bedroom, police found swords, a bow, gun parts, dozens of rounds of 9-millimeter handgun ammunition, and airsoft guns. They also found a fully assembled and loaded 9-millimeter firearm hanging from a shoulder holster on the back of the door leading from the master bedroom into the master bathroom. Police located a second fully assembled and unsecured 9-millimeter handgun in the top drawer of the master bathroom vanity. The firearm had an empty cartridge casing inside it, meaning a round had been fired from the gun. Police also found a bindle of methamphetamine on top of the master bathroom vanity countertop next to a toy car. Elsewhere in the master bathroom, police discovered several glass pipes used to smoke methamphetamine.

4

B. *Procedural Background*

After a joint trial, a jury found Schemensky and Frear guilty of one count of felony child endangerment (Pen. Code, § 273a, subd. (a); count 1).[1] The jury also found Frear guilty of one count of being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 3), and it deadlocked on a charge that Frear discharged a firearm in a grossly negligent manner (§ 246.3, subd. (a); count 2). The trial court placed Schemensky on formal probation for four years and imposed, but stayed, a custodial term of 180 days in county jail.

At a subsequent probation hearing, the court reduced Schemensky's child endangerment conviction to a misdemeanor pursuant to section 17, subdivision (b). During the hearing, the court asked the prosecutor, "If it is reduced to a misdemeanor, is it still four years?" The prosecutor replied, "It is, Your Honor." Thereafter, the court resentenced Schemensky to informal probation for four years.

III

DISCUSSION

A. *Substantial Evidence Supported the Child Endangerment Conviction*

Schemensky contends there was insufficient evidence to support her conviction for child endangerment. Viewing the evidence in the light most favorable to the judgment, and drawing every reasonable inference from the evidence to support the judgment, we reject Schemensky's argument and conclude the evidence was sufficient to support the conviction.

1. *Legal Standards*

In assessing whether there was sufficient evidence to sustain a criminal conviction, we apply the substantial evidence standard of review. (*People v. Rangel* (2016) 62 Cal.4th 1192, 1212.) Under that standard, " ' "we

---

[1] Further undesignated statutory references are to the Penal Code.

5

review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Garcia* (2020) 46 Cal.App.5th 123, 144.) We " 'presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence[,]' " and we " 'may not substitute [our] judgment for that of the jury.' " (*Ibid.*) "We do not reweigh the evidence or resolve conflicts in the testimony when determining its legal sufficiency. [Citation.] Rather, before we can set aside a judgment of conviction for insufficiency of the evidence, 'it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support [the jury's finding].' " (*Id.* at p. 145.)

2. *Application*

The jury found Schemensky guilty of child endangerment in violation of section 273a, subdivision (a). "Section 273a, subdivision (a) 'is an omnibus statute that proscribes essentially four branches of conduct.' [Citation.] As relevant here, it provides: 'Any person who, under circumstances or conditions likely to produce great bodily harm or death, [1] willfully causes or permits any child to suffer, or [2] inflicts thereon unjustifiable physical pain or mental suffering, or [3] having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or [4] willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years.' " (*People v. Valdez* (2002) 27 Cal.4th 778, 783 (*Valdez*).)

"Violation of section 273a, subdivision (a) ' "can occur in a wide variety of situations: the definition broadly includes both active and passive conduct,

6

i.e., child abuse by direct assault and child endangering by extreme neglect."
[Citation.] ... Section 273a[, subdivision (a)] is "intended to protect a child
from an abusive situation in which the probability of serious injury is great."
[Citation.] "[T]here is no requirement that the actual result be great bodily
injury." ' " (*Valdez, supra*, 27 Cal.4th at p. 784; see also *People v. Wilson*
(2006) 138 Cal.App.4th 1197, 1205 (*Wilson*) ["Actual physical injury is not an
element of felony child endangerment."].)

Here, the district attorney prosecuted Schemensky solely under the
theory she violated the fourth branch of conduct proscribed by section 273a,
subdivision (a)—i.e., she willfully caused or permitted J.F. to be placed in a
situation where his person or health was endangered. To establish felony
child endangerment, the district attorney was required to prove: "(1) care or
custody of a child by the defendant; (2) circumstances likely to produce great
bodily harm or death; and (3) criminal negligence in permitting the child to
be placed in a situation endangering the child's person or health." (*People v.
Sanders* (1992) 10 Cal.App.4th 1268, 1273 (*Sanders*).) The requirement that
great bodily harm or death must be "likely" does not mean "that death or
serious injury is probable or more likely than not." (*Wilson, supra*, 138
Cal.App.4th at p. 1204.) Rather, " 'likely' as used in section 273a means a
substantial danger, i.e., a serious and well-founded risk, of great bodily harm
or death." (*Ibid.*)

On appeal, Schemensky broadly argues the evidence was insufficient to
support her child endangerment conviction. She does not specify which
elements of the conviction were, in her view, unproven. However, she
emphasizes that there was evidence adduced at trial tending to establish that
she did not own the illegal firearms and methamphetamine that were kept in
the apartment (Frear owned them); the firearms and methamphetamine

7

were usually stored in safes in the master bathroom; and the family had an unspoken rule that J.F. was not allowed in the master bedroom or master bathroom without adult supervision. This evidence is generally probative of the second and third elements of the child endangerment offense—that is, whether the circumstances were likely to produce great bodily harm or death, and whether Schemensky was criminally negligent in permitting J.F. to be placed in a situation endangering his person or health. Thus, we will focus our attention on whether the evidence was sufficient to support the jury's findings as to these two elements.[2]

Viewing the record in the light most favorable to the judgment of conviction, we conclude substantial evidence supported the jury's finding that there was a serious and well-founded risk J.F. would suffer great bodily harm or death due to the presence of illegal firearms and methamphetamine in the family's apartment. This same evidence amply supported the jury's finding that Schemensky endangered J.F. in a criminally negligent manner by raising and homeschooling him in such a potentially dangerous environment.

When police searched the family's apartment, they recovered two fully assembled, illegally owned 9-millimeter firearms—one of which was loaded and the other of which had been fired inside the apartment that same night. The police found dozens of rounds of 9-millimeter handgun ammunition and numerous other gun parts in the apartment as well. Notably, both of the fully assembled firearms were accessible to nine-year-old J.F. and the other minor occupants of the apartment. Police found one of the firearms hanging freely from a shoulder holster on the back of the door leading from the master bedroom to the master bathroom, while they found the second firearm

---

2     Schemensky does not make any argument, express or implied, that there was insufficient evidence to support the jury's finding that she cared for, or had custody of, J.F.

similarly unsecured in a bathroom vanity drawer. "Storing loaded firearms in a home occupied by children without denying the children access to the weapons creates a potential peril under the [child endangerment] statute." (*People v. Hansen* (1997) 59 Cal.App.4th 473, 479–480; see *People v. Odom* (1991) 226 Cal.App.3d 1028, 1033 [substantial evidence supported child endangerment conviction where defendant's children had access to twelve guns, included three loaded guns]; accord *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 995 ["It takes little to persuade us that a young child with access to a loaded gun is at substantial risk of serious physical harm."].) As Frear's accidental discharge of a firearm inside the apartment perfectly demonstrates, a person or child who handles a loaded firearm without adequate care can easily shoot the firearm—intentionally or unintentionally—with potentially fatal consequences for himself or others.

A reasonable jury could also find Schemensky jeopardized the health and safety of J.F., in a criminally negligent manner, by raising and homeschooling him in an apartment where methamphetamine was present. (*People v. Bernal* (2019) 42 Cal.App.5th 1160, 1168 ["keeping and using methamphetamine in a home with a six-year-old and a one-month-old meets the standard of placing children in a situation where their health may be endangered" under child endangerment statute]; *People v. Perez* (2008) 164 Cal.App.4th 1462, 1472–1474 (*Perez*) [substantial evidence supported willful endangerment element of child endangerment conviction where there was evidence that defendant left heroin in unlocked drawer in entry room end table and on bedroom dresser]; *People v. Little* (2004) 115 Cal.App.4th 766, 772 ["That defendant possessed and used drugs in the residence ... only strengthens the finding that the circumstances in the residence posed a threat to the child's health and safety."].) During the search of the

9

apartment, police found a bindle of methamphetamine on top of the master bathroom vanity countertop directly next to a toy car. They also found numerous glass methamphetamine pipes elsewhere in the bathroom. The presence of methamphetamine and methamphetamine pipes inside the apartment created a serious and well-founded risk J.F. would ingest the methamphetamine and potentially suffer serious bodily injury or death.

Schemensky does not dispute the fact that police found firearms, methamphetamine, and drug paraphernalia inside the apartment, but contends the evidence was nonetheless insufficient to support the conviction because she (and Frear) took measures to prevent J.F. from accessing these unlawful and dangerous items. In particular, Frear testified that he usually stored his firearms and methamphetamine in safes located in the master bedroom. However, "[a] trier of fact is free to disbelieve a witness, even one uncontradicted, if there is any rational ground for doing so." (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043.) Here, the jury could reasonably reject Frear's self-serving testimony that he typically kept his firearms, methamphetamine, and drug paraphernalia in safes, given that *none* of these items were stored in safes or otherwise secured when the police searched the extremely messy and trash-filled family apartment.

Along similar lines, Schemensky claims she and Frear adequately minimized the threat of peril to J.F. because, according to Frear and J.H., Schemensky and Frear forbade the children from accessing the master bedroom and master bathroom without parental supervision. However, J.H. testified that, notwithstanding this prohibition, she saw J.F. playing in the master bedroom unaccompanied by parents. According to J.H., she saw J.F. in the master bedroom touching or playing with forbidden items like throwing knives, airsoft guns, bows and arrows, and swords. Based on this

evidence, a jury could rationally conclude either that the family did not have a rule prohibiting the children from accessing the areas in which the firearms and narcotics were stored, or if such a rule existed, it was ineffective in light of nine-year-old J.F.'s natural curiosity. (*Perez, supra*, 164 Cal.App.4th at pp. 1473–1474 ["the jury was free to disbelieve [mother's] testimony that she had educated [minor] regarding the use of syringes, or to draw the reasonable inference that even if [mother] had attempted to educate [minor] regarding syringe safety, it would be difficult for a child [minor's] age to apply those rules to a situation that did not involve her mother's syringes, or to overcome a child's natural sense of curiosity"].)

Finally, Schemensky argues the evidence was insufficient to support the conviction because the illegal firearms, methamphetamine, and drug paraphernalia recovered from the apartment belonged to Frear, not her. Schemensky misunderstands the requirements of a child endangerment conviction. To prove child endangerment, the district attorney was not obligated to show that Schemensky herself owned the property or caused the dangerous conditions that imperiled the child. Rather, it was required to prove that, under circumstances likely to produce great bodily harm or death, Schemensky willfully permitted a child in her care or custody to be placed in a situation in which the child's person or health was endangered. (*Sanders, supra*, 10 Cal.App.4th at p. 1273.) Applying these standards, and viewing the evidence in the light most favorable to the judgment, we conclude substantial evidence supported the jury's verdict.

B. *The Trial Court Did Not Abuse Its Discretion by Imposing a Four-Year Informal Probation Term*

When the trial court reduced Schemensky's conviction from a felony to a misdemeanor, it resentenced her to informal probation for a term of four years. Schemensky asserts the court abused its discretion during

11

resentencing because, she claims, the court was unaware it had the discretion to impose a probation term shorter than four years. In response, the People contend Schemensky has not shown that the court misapprehended the scope of its sentencing discretion. We agree with the People.[3]

In general, the maximum probation length for a felony is two years (§ 1203.1, subd. (a)), and the maximum probation length for a misdemeanor is one year (§ 1203a, subd. (a)). These limitations do not apply when a defendant is convicted of an "offense that includes specific probation lengths within its provisions." (§§ 1203.1, subd. (*l*)(1)), 1203a, subd. (b).)

The child endangerment statute is a statute that dictates specific probation lengths within its provisions and, therefore, a child endangerment conviction is not subject to the maximum probation length limitations set forth in sections 1203.1 or 1203a. It provides that when a person is convicted of child endangerment and receives probation, the sentencing court must impose "[a] mandatory minimum period of probation of 48 months." (§ 273a, subd. (c)(1).) However, the court may waive this requirement (and other minimum conditions of probation), "upon a finding that the condition would not be in the best interests of justice." (*Id.*, subd. (c)(5).) In such cases, the court must "state on the record its reasons for any waiver." (*Ibid.*)

We review the trial court's sentencing decision for abuse of discretion. (*People v. Panozo* (2021) 59 Cal.App.5th 825, 837.) " 'To prove an abuse of discretion, " '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In

---

3    The People also argue Schemensky forfeited her argument by failing to object to the trial court's imposition of a four-year informal probation term. We do not reach the merits of the People's forfeiture argument because, even if the argument is preserved, Schemensky has failed to establish that the court misunderstood the scope of its sentencing discretion.

the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " [Citation.] To meet this burden, the defendant must "affirmatively demonstrate that the trial court misunderstood its sentencing discretion." ' " (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 988.)

Schemensky contends the trial court abused its discretion when it placed her on informal probation for a term of four years because, according to Schemensky, the court misapprehended the scope of its sentencing discretion. In particular, she claims the court was unaware it had the authority under section 273a, subdivision (c)(5), to waive the four-year mandatory minimum probation requirement. In support of this assertion, she points to a brief colloquy between the court and the district attorney during which the court asked, "If it is reduced to a misdemeanor, is it still four years?" The district attorney replied, "It is, Your Honor."

Schemensky has not affirmatively shown that the court misunderstood the scope of its sentencing discretion. Although the court briefly (and correctly) confirmed with the district attorney that "it" (the presumptive mandatory minimum probation requirement) was "still four years," the court did not state or otherwise suggest that it believed it had no authority to waive the mandatory minimum probation requirement. The court did not indicate that it would have imposed a shorter probation term if it could do so. In short, as Schemensky herself concedes in her opening brief, "the record is entirely silent as to whether the court was aware ... [it] could deviate from the otherwise mandatory four-year [probation] term."

"On appeal, we presume that the trial court followed established law and thus properly exercised its discretion in sentencing a criminal defendant.

[Citations.] Thus, we may not assume the court was unaware of its discretion simply because it failed to explicitly refer to its alternative sentencing choices." (*People v. Weddington* (2016) 246 Cal.App.4th 468, 492; see *People v. Coleman* (2024) 98 Cal.App.5th 709, ["Defendant's citation to a silent record is insufficient to meet his burden to demonstrate an abuse of [sentencing] discretion"]; *People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527 ["[I]n light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, we cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion."].)

IV

DISPOSITION

The judgment of conviction and the postjudgment order are affirmed.


McCONNELL, P. J.

WE CONCUR:


DATO, J.


BUCHANAN, J.

14