Filed 8/19/24  P. v. Stoot CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CELESTINE JOHN STOOT,<br><br>    Defendant and Appellant. | D082995<br><br><br><br>(Super. Ct. No. SWF2101003) |

APPEAL from a judgment of the Superior Court of Riverside County, Jeffrey M. Zimel, Judge.  Affirmed.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Namita Patel, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

A jury convicted Celestine John Stoot of first degree murder with personal use of a firearm, felony child endangerment, and possession of a

firearm and ammunition by a felon. Stoot seeks reversal of the murder and child endangerment counts, claiming the trial court failed to instruct the jury properly on lesser included offenses. Finding no error on the murder count and harmless error on the child endangerment count, we affirm.

## II. BACKGROUND

In the summer of 2021, Stoot and Natasha Barlow were in a relationship. They had a child together, then two-year-old John Doe. During their relationship, Stoot would threaten Barlow with violence, like maiming her with a chainsaw, burning down her house while she was inside, and shooting her. Primarily due to these repeated threats, Barlow wanted to end the relationship with Stoot.

On July 4, 2021, Stoot shot Barlow to death in his small two-bedroom house. A single round fatally pierced Barlow's neck and came to rest in the adjoining bedroom, very close to a child's bed. That neighboring room is where Stoot's young children stayed when visiting.[1]

As a result of their investigation, the police concluded that a struggle occurred throughout the house preceding the shooting. A fan and two chairs were knocked over in the living room, Barlow's purse was on the kitchen floor, one of Barlow's artificial fingernails was found in the hallway outside of Stoot's bedroom, and a wig Barlow normally glued to her head was found on Stoot's bed.

Testifying at trial, Stoot disputed that a struggle occurred; he attributed the state of Barlow's purse and the living room chairs to John Doe and claimed the shooting was an accident. He explained that after returning to his house from a party, Barlow went inside while he stayed outside with

---

[1] Stoot had other children, two of whom were younger than John Doe. However, John Doe was the only child in the home during the murder.

2

John Doe to play for a few minutes. He then brought John Doe inside, locked the doors, and went into his bedroom where Barlow pointed a gun at him and said, "I'm tired of your shit." According to Stoot, he tried to grab the gun from Barlow, causing it to accidentally fire and kill Barlow. He claimed he had no intention of shooting or killing Barlow, and he was unable to say whether he or Barlow pulled the trigger.

Stoot also testified that he was unaware of John Doe's exact location at the time of the shooting. He assumed John Doe was in the living room, but when he exited his bedroom after shooting Barlow, he saw John Doe halfway down the short hallway outside the bedroom.

Leaving the scene of the murder on foot, Stoot walked approximately one mile with John Doe before accepting a ride from J.L., a person unknown to Stoot. With Stoot and John Doe sitting in the front seat, J.L. drove to a gas station approximately 30 minutes away. Stoot's second cousin retrieved Stoot and John Doe from the gas station and drove them back to Stoot's house. While there, Stoot moved Barlow's body onto a rug and gathered some belongings. He then fled to Las Vegas with John Doe, discarding Barlow's car, his cell phone, and the murder weapon along the way. On July 6, 2021, law enforcement apprehended Stoot.

The Office of the Riverside County District Attorney filed charges against Stoot. A jury found Stoot guilty of (1) first degree murder (Pen. Code,[2] § 187, subd. (a)), during which he personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)); (2) felony child endangerment (§ 273a, subd. (a)); (3) possession of a firearm by a felon (§ 29800, subd. (a)(1)); and (4) possession of ammunition by a felon (§ 30305, subd. (a)(1)). The trial court sentenced Stoot to prison for

[2]    All subsequent statutory references are to the Penal Code.

3

100 years to life plus 13 years and four months.  Stoot's timely appeal followed.

## III. DISCUSSION

Stoot argues the trial court failed to properly instruct the jury on lesser included offenses for murder and felony child endangerment.  For murder, he claims the trial court should have instructed on imperfect self-defense.  For felony child endangerment, he contends the court failed to provide the jury with instructions for its misdemeanor counterpart.  We conclude insufficient evidence supported giving an imperfect self-defense instruction.  And while the People concede the trial court erred by not instructing the jury on misdemeanor child endangerment, we find the error harmless.  We therefore affirm the judgment.

A.     *Standard of Review*

We independently review whether an instruction on a lesser included offense is appropriate.  (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.)  A lesser included offense instruction is required when supported by substantial evidence, meaning a reasonable jury could conclude " 'that the lesser offense, but not the greater, was committed.' "  (*Ibid.*)

B.     *Imperfect Self-defense*

Stoot claims his own testimony provided sufficient evidence to support an imperfect self-defense instruction.  Stoot points to his description of attempting to take the gun from Barlow after she both pointed the weapon at him and made a threatening statement.  He further contends that the trial court's decision to instruct on perfect self-defense shows there was substantial evidence of imperfect self-defense.

"A homicide is considered justified as self-defense where the defendant actually and reasonably believed the use of deadly force was necessary to

4

defend himself from imminent threat of death or great bodily injury.  Under such circumstances, the killing is not a crime.  [Citations.]  Where the defendant kills while actually but unreasonably believing the use of deadly force was necessary, defendant is considered to have acted in imperfect self-defense.  Imperfect self-defense is not a complete defense to a killing, but negates the malice element and reduces the offense to voluntary manslaughter." (*People v. Sotelo-Urena* (2016) 4 Cal.App.5th 732, 744, italics omitted.)

Stoot points only to his testimony as a basis for self-defense, whether perfect or imperfect.  According to Stoot's version of events that night, the gun inadvertently discharged when Stoot attempted to take it from Barlow.  As Stoot explained to the jury, he did not intend to shoot or kill Barlow, rather the shooting happened by accident, and he was unsure who pulled the trigger.  If believed, this testimony does not show that Stoot actually but unreasonably believed he needed to use deadly force to defend himself, or that he shot Barlow to defend himself.  Consequently, the court lacked any evidence on which to base a jury instruction that voluntary manslaughter resulted from imperfect self-defense.

We also find unpersuasive Stoot's argument that because the trial court instructed the jury on perfect self-defense it erred by failing to give the jury an instruction on imperfect self-defense.  " '[J]ust because a trial court instructs a jury on perfect self-defense, this does not necessarily mean it has a sua sponte duty to also instruct on imperfect self-defense.' " (*People v. Valenzuela* (2011) 199 Cal.App.4th 1214, 1231, italics omitted.)  Accordingly,

5

the fact that the trial court instructed on perfect self-defense does not change our analysis.[3]

In sum, Stoot fails to show that substantial evidence supported an imperfect self-defense jury instruction.

## C.    *Child Endangerment*

Stoot argues no evidence showed John Doe was near the shooting when it occurred.  Nor did the evidence demonstrate that Stoot put his son in circumstances likely to produce great bodily harm or death.  Stoot further contends a rational juror could have found that accepting a car ride from a stranger placed John Doe in some type of theoretical danger, but not circumstances likely to cause great bodily harm or death.  He therefore claims the trial court should have instructed the jury on misdemeanor child endangerment, and the court's failure to do so was prejudicial error.

The People concede the trial court erred by not instructing the jury on misdemeanor child endangerment, but argue the error was harmless.  We accept the concession and limit our analysis to the issue of harmlessness.

Child endangerment occurs when a person "willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered."  (§ 273a, subd. (a).)  The offense is a felony when it occurs "under circumstances or conditions likely to produce great bodily harm

---

[3]    The People contend on appeal that the trial court should not have instructed the jury on perfect self-defense.  The People forfeited that position by failing to object to the instruction during trial and, in any event, the perfect self-defense instruction's propriety is not before us.

or death." (§ 273a, subd. (a).) Otherwise, the offense is a misdemeanor. (§ 273a, subd. (b).)

"[T]he definition of 'likely' in the context of section 273a is not that death or serious injury is probable or more likely than not." (*People v. Wilson* (2006) 138 Cal.App.4th 1197, 1204.) Instead, it "means a substantial danger, i.e., a serious and well-founded risk, of great bodily harm or death." (*Ibid.*)[4] " 'Great bodily harm refers to significant or substantial injury,' " but actual injury is not required. (*People v. Cortes* (1999) 71 Cal.App.4th 62, 80.)

Error in failing to instruct the jury on the lesser included offense of misdemeanor child endangerment does not require reversal unless it is reasonably probable that Stoot would have obtained a more favorable result in the absence of that error. (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1335.) "The question is not what a jury *could* have done, but what a jury would *likely* have done if properly instructed." (*People v. Larsen* (2012) 205 Cal.App.4th 810, 831.) In making that determination, we may consider the relative strengths and weaknesses of the evidence supporting the greater and lesser offenses, "the instructions as a whole, the jury's findings, and the closing arguments of counsel." (*Ibid.*)

At closing argument, the People argued the child endangerment charge was based on a continuous course of conduct, starting with John Doe's presence in the house during the murder and continuing through Stoot allowing John Doe to sit in the front seat of a car driven by a stranger. The

---

4    Although one case has questioned *Wilson*'s definition of "likely" (*People v. Chaffin* (2009) 173 Cal.App.4th 1348, 1351–1352 [preferring an interpretation where " ' "the probability of serious injury is great" ' "]), and others have construed the term differently (see, e.g., *People v. Hansen* (1997) 59 Cal.App.4th 473, 479 [requiring danger that is " 'reasonably foreseeable' "]), we would reach the same result discussed below regardless of which interpretation we employed.

People claimed John Doe could have been injured in a car accident or J.L. could have been a serial killer. However, the People's focus centered on the risk of physical danger posed by firing a gun in a small house while a child was present; they argued this was "the easiest and most clear" basis for the charge. We agree.

Stoot did not challenge that John Doe was in the house during the murder. Stoot merely claimed he was unaware of John Doe's exact location during the shooting, and when Stoot exited his bedroom after the murder, John Doe was halfway down the short hallway away from that room. Stoot's unawareness increased the risk of physical harm to John Doe, who was a typical two-year-old capable of walking and roaming around the house. When Stoot shot Barlow, John Doe could have been anywhere in the residence, including in the bullet's path into the children's bedroom.

Further, there was no dispute that Stoot's two-bedroom home was compact. It was approximately 1,000 to 1,200 square feet and described as "very small." The home's confines were shown to the jury in numerous pictures, as well as a three-dimensional rendering. Few places in this tight space allowed John Doe safety from a weapon discharge, as the bullet trajectory demonstrated. The projectile left Stoot's bedroom, traveled through a wall and into the adjoining bedroom intended for use by the younger children like John Doe. Indeed, the bullet ended up very close to a child's bed.

Based on this overwhelming evidence and the jury's findings, an ambulatory John Doe was in this small house when Stoot murdered John Doe's mother. Stoot did not know John Doe's precise location while Stoot struggled with Barlow throughout the residence and intentionally fired a bullet that travelled through a wall into the room designated for children.

Analyzing these facts in terms of felony child endangerment, we find John Doe faced two different, serious risks. First, of mental suffering in the form of John Doe witnessing his mother's death or her dead body. However, the jury heard no direct evidence of mental suffering, nor did the People ask the jury to find guilt on that ground. The second hazard, the one on which the People concentrated, was that John Doe might be struck by the bullet fired from the gun. A gunshot wound in a two-year-old is a significant injury that could lead to death. Further, the risk of such an injury was serious and well-founded based on the home's limited space, the inability of the house walls to stop a bullet, John Doe's mobility, and Stoot's ignorance of John Doe's exact location. As such, the most prominent threat to John Doe at the murder scene involved "circumstances or conditions likely to produce great bodily harm or death." (§ 273a, subd. (a).)

As for the car ride with J.L., the risk of physical harm theoretically existed because the driver was unknown, and John Doe sat in the front seat with this stranger. But that risk was less concrete than the risk of physical harm posed by John Doe's presence during the shooting. The jury was instructed that to convict of felony child endangerment, the probability of great bodily harm or death must be high. We presume the jury understood and followed that instruction. (*People v. Wilson* (2023) 89 Cal.App.5th 1006, 1014.) It is highly unlikely that the jury convicted Stoot solely based on the car ride. Instead, we find the jury based its finding of child endangerment primarily, if not solely, on the risk of John Doe being struck by a bullet, which made the offense a felony for the reasons stated above. Under these circumstances, even if the trial court gave a misdemeanor child endangerment instruction, it is reasonably probable the jury would still

9

convict Stoot of felony child endangerment.  Accordingly, the error in failing to instruct the jury on the lesser included offense was harmless.


## IV. DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DO, J.